This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**BRANDON CRIBBS**,

Worker-Appellant,

v. NO. 29,896

**COASTAL CHEMICAL and**
**SPECIALTY RISK SERVICES**,

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Gregory D. Griego, Workers' Compensation Judge**

David S. Proffit
Albuquerque, NM

for Appellant

Allen, Shepherd, Lewis, Syra & Chapman, P.A.
Kimberly A. Syra
Darin A. Childers
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**ROBLES, Judge.**

We reverse the Workers' Compensation Judge's (WCJ) determination that reasonable notice was provided to Brandon Cribbs (Worker) by Coastal Chemical and Specialty Risk Services (Employer/Insurer) and that Worker was in possession of the right to direct medical care and make the initial determination of a health care provider (HCP) following his injury.

**I.    BACKGROUND**

On March 23, 2009, Worker fell and injured his back while working at a gas well. Worker was taken by helicopter to the San Juan Regional Medical Center where he received emergency medical care by Dr. Graham Tull. While at the hospital, Worker was visited by two supervisors on behalf of Employer/Insurer. Upon discharge from the hospital on the same day as the injury, Worker was told by Dr. Tull to seek follow-up care with his primary care physician (PCP) and was given discharge instructions that, likewise, informed Worker to seek follow-up care with his PCP. Worker sought treatment from his PCP, Dr. Ken Crider, the next day. On March 27, 2009, Worker was telephoned by Jennifer Akin, a representative of Employer/Insurer. Following that telephone conversation, Worker received a letter from Akin on March 31, 2009, stating: "This letter will confirm that you made the initial selection of your

current treating physician . . . . Please be aware that any services you seek that are not recommended by [your current treating physician] and/or his referrals will not be covered."

On August 24, 2009, Worker issued a notice of change of his HCP and, in response, Employer/Insurer filed an objection to the notice of change with the Workers' Compensation Administration (WCA) several days later. Following a hearing, the WCJ sustained Employer/Insurer's objection to Worker's notice of change of his HCP in a memorandum opinion. Subsequently, on October 2, Worker filed a motion for reconsideration. On October 6, the WCJ denied the motion.

**II.    DISCUSSION**

On appeal, we are asked to review the WCJ's conclusion that reasonable notice was provided to Worker that he was allowed to make the initial HCP selection. We conclude that the WCJ's legal conclusions were contrary to law and, therefore, we reverse.

This Court will review a WCJ's "interpretation of a statute de novo." *Grine v. Peabody Natural Res*., 2006-NMSC-031, ¶ 17, 140 N.M. 30, 139 P.3d 190. "Our main goal in statutory construction is to give effect to the intent of the [L]egislature." *Archer v. Roadrunner Trucking, Inc*., 1997-NMSC-003, ¶ 7, 122 N.M. 703, 930 P.2d 1155 (filed 1996). While deference is usually given "to an agency's interpretation of

an ambiguous statute or regulation" that it administers, this Court will nonetheless "interpret the law in a manner consistent with the legislative intent." *Howell v. Marto Elec.*, 2006-NMCA-154, ¶ 16, 140 N.M. 737, 148 P.3d 823.

We begin our analysis with a review of New Mexico's statutes and regulations concerning the selection of HCPs. When a worker is injured, the Workers' Compensation Act (Act) provides that the employer must "provide the worker in a timely manner reasonable and necessary health care services from a [HCP]." NMSA 1978, § 52-1-49(A) (1990). Once an employer receives notice that a worker is injured, "the HCP selection procedures in the . . . Act are triggered, and the employer has the right to either direct care or allow the worker to direct care." *Howell*, 2006-NMCA-154, ¶ 18; NMSA 1978, § 52-1-29(A) (1990); § 52-1-49(B). Once the employer has decided which party will make the initial selection of an HCP, the employer is required to provide the worker with notice of the employer's decision in writing. 11.4.4.11(C)(2)(a) NMAC (2003). Although an employer's decision may be communicated pre-injury to workers in a general notice on a poster "or any other method [the] employer knows will be successful in alerting the worker," the communication may also occur post-injury. *Howell*, 2006-NMCA-154, ¶ 15 (internal quotation marks and citation omitted). If an employer fails to give the required notice under 11.4.4.11(C)(2)(a) NMAC, then the statute provides that "the employer shall

4

be presumed, absent other evidence, to have selected the HCP initially." 11.4.4.11(C)(2)(b) NMAC. Moreover, medical treatment provided "prior [to] the employer[']s written decision to either select the HCP, or to permit the worker to select the HCP, shall be considered authorized health care, the cost of which is to be born by the employer." 11.4.4.11(C)(2)(c) NMAC. Finally, the party that did not have the initial selection of the HCP following the injury, may, after sixty days, select a different HCP. Section 52-1-49(B), (C).

In the instant case, Worker argues that Employer/Insurer had notice of his injury as evidenced by the fact that he was visited by two supervisors in the hospital. It is Worker's contention that (1) he was ordered to pursue follow-up care with his PCP; (2) he never made a choice of an HCP; and (3) because he was not notified in writing, as required by 11.4.4.11(C)(2)(c) NMAC, the care that he received from his PCP was either authorized care under 11.4.4.11(C)(2)(c) NMAC, or it should be construed as Employer/Insurer's initial HCP selection under 11.4.4.11(C)(2)(b) NMAC. We agree and conclude that Dr. Crider must be considered Employer/Insurer's initial selection of an HCP.

In *Howell*, this Court noted that "[i]t is possible that there could be an authorized HCP for a reasonable time following emergency care and before the employer decides which party will select the initial HCP[.]" 2006-NMCA-154, ¶ 19.

5

We went on to explain that Section 52-1-49 contemplates only two categories of HCPs: those who are initially chose, and those who are chosen by the other party after sixty days. *Id.* We held that "once an employer has notice of a work-related injury and the reasonable time has passed, the first non-emergency HCP must be considered the initial HCP." *Howell*, 2006-NMCA-154, ¶ 19. We see no reason to depart from this interpretation of the law in this particular case.

In its memorandum opinion, the WCJ noted:

> 11.4.4.11(C)(2)(A) [NMAC] does not appear to mandate a specific set of "magic words" that must be communicated to a worker regarding direction of medical care [and, therefore,] the letter of March 31, 2009, did provide reasonable notice to the Worker that Worker was in possession of the right to direct medical care for the first 60 days following the injury.

Employer/Insurer encourages this Court to affirm by arguing that the March 31 letter "provided adequate notice" to Worker of its decision to let Worker make the initial HCP selection, and because there is no specific language that must be used, the "confirmatory" letter that came as a follow-up to the March 27 phone call should be construed as sufficient. This is not the law. The correct standard under 11.4.4.11(C)(2)(a) NMAC is whether the required notice is in a writing that is reasonably calculated to provide notice of a worker's right to choose, or notice that the selection has been made by an employer. In the instant case, Worker testified that if he had known that he could select an initial HCP, he would have chosen a "back

6

specialist" and not his general PCP. Likewise, Akin testified that, when she spoke to Worker on the phone before sending the March 31 letter, she "advised him at that time that it was our position that he had initial HCP selection to Dr. [Crider], based on the referral from the emergency room doctor . . . and because he followed up with that referral from the emergency room doctor . . . then Dr. [Crider] becomes his initial selection of HCP." The statutory and regulatory scheme of the Act in plain and ordinary terms requires an employer to provide a worker with notice in writing of an employer's decision regarding selection of the initial HCP. 11.4.4.11(C)(2)(a) NMAC. "[The e]mployer was entitled to make the initial HCP selection or to permit [the w]orker to make the selection. If the decision of the employer is not communicated in writing to the worker, the employer shall be presumed, absent other evidence, to have selected the HCP initially." *Grine*, 2006-NMSC-031, ¶ 24 (internal quotation marks and citations omitted). While we agree with the WCJ that 11.4.4.11(C)(2)(a) NMAC does not contain magic words that must be used in the written notice to a worker, we decline to interpret a letter that states that a worker has already made a selection as written notice that a worker may make a selection.

Employer/Insurer next argues that "even if this Court were to hold that written notice to Worker came too late, and that the presumption under 11.4.4.11(C)(2)(b) [NMAC] is triggered, (that Employer/Insurer selected the HCP initially), there is

sufficient evidence in the record to rebut it." 11.4.4.11(C)(2)(b) NMAC provides that "[i]f the decision of the employer is not communicated in writing to the worker, the employer shall be presumed, *absent other evidence*, to have selected the HCP initially." (Emphasis added.) Thus, Employer/Insurer's argument assumes that the presumption created under 11.4.4.11(C)(2)(b) NMAC, when an employer fails to provide notice of its choice in writing, can be rebutted with other evidence. We disagree.

In *Howell*, this Court declined to hold that 11.4.4.11(C)(2)(b) NMAC created a presumption that could be rebutted with evidence. *Howell*, 2006-NMCA-154, ¶¶ 27-32. We noted that, in situations where a worker required non-emergency medical attention or follow-up care after an accident, such a worker would seek that treatment on his or her own if guidance was not provided by the employer. *Id.* ¶ 30. If such a worker were later to challenge the employer's non-compliance with 11.4.4.11(C)(2)(b) NMAC, an employer could easily present evidence that (1) it was, in fact, the worker that selected the post accident, non-emergency, follow-up care on his or her own; and (2) the employer did not, in fact, choose the initial HCP. *Howell*, 2006-NMCA-154, ¶ 30. "To allow either set of facts to rebut the presumption would eliminate the presumption in its entirety." *Id.* We therefore concluded that the presumption created was a clear means of expressing the legislative intent in Section

8

52-1-49(B) (requiring the employer to either initially select the HCP or permit the worker to make the selection), and we would therefore "not construe the presumption to be allowed to vanish or be rebutted in this manner." *Id.* Such is the case here as well.

Employer/Insurer did not provide notice of its decision regarding which party would make the initial selection of an HCP. Employer/Insurer cannot provide notice in writing that a worker has the right to choose an initial HCP and identify who that choice is in the same document without defeating the concept of choice and the requirement of notice as contemplated by the Legislature in Section 52-1-49(B) and articulated in 11.4.4.11(C)(2)(b) NMAC.

We hold that the WCJ erred as a matter of law in concluding that the March 31 letter to Worker did provide reasonable notice that Employer/Insurer had decided to let Worker make the initial selection of an HCP. Likewise, we decline to examine the evidence presented in the record with an eye toward rebutting the presumption created by Employer/Insurer's failure to provide written notice in accordance with 11.4.4.11(C)(2)(b) NMAC. As in *Howell*, "[w]e express no opinion [regarding] whether Employer[/Insurer] may otherwise rebut the presumption with other evidence." 2006-NMCA-154, ¶ 33.

**III. CONCLUSION**

9

We reverse and remand for further proceedings consistent with this Opinion.

**IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Judge**

_____
**MICHAEL E. VIGIL, Judge**